20.4694

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLENN SCHEUER and LINDA SCHEUER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No.: 23-cv-00531 |
| | ) |
| RADO EXPRESS LOGISITICS, INC. and | ) |
| TRINITY RELOCATION GROUP, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiffs, GLENN SCHEUER and LINDA SCHEUER (collectively "Plaintiffs"), by and through their attorneys, Christopher J. Pickett and Haley M. Loutfy of LINDSAY, PICKETT & POSTEL, LLC, and for their Complaint against the Defendants, RADO EXPRESS LOGISITICS, INC. ("Rado") and TRINITY RELOCATION GROUP, LLC ("Trinity"), and allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action for damages incurred as a result of Rado and Trinity's fraudulent and unlawful conduct in direct violation of federal and state law.

## THE PARTIES

2. Glenn Scheuer is a resident of Vero Beach, Florida.

3. Linda Scheuer is a resident of Vero Beach, Florida.

4. Rado is an Illinois corporation with its principal place of business located in Streamwood, Illinois. The registered agent of Rado, My Company, Inc., is located in Lincolnshire, Illinois.

5. Trinity is a limited liability company organized under Florida law with its principal place of business located in West Palm Beach, Florida. Trinity's member, Brian Fox, is located in West Palm Beach, Florida.

## JURISIDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiffs are alleging violations of federal laws and regulations.

7. Venue is proper under 28 USC § 1391(b)(2) and 28 USC § 1391(b)(3) as Rado's Interstate Bill of Lading Contract, which gave rise to this action, was prepared in Illinois by Rado, an Illinois corporation.

## FACTS

8. On or about June 7, 2022, Plaintiffs spoke with Trinity customer representative, William Jameson ("Jameson"), regarding a move from their home in Fairfield, Ohio to Vero Beach, Florida.

9. During a lengthy telephone call, Jameson assisted Plaintiffs in evaluating their household items for a binding moving estimate (the "binding estimate").

10. Plaintiffs provided Trinity with a detailed inventory of the items located in their Ohio residence.

11. The initial binding estimate provided by Trinity reflected an estimated volume of $1,367 cf. (9,569 lbs.), and an estimated total moving fee of $12,177.00. A true and correct copy of Trinity's initial binding estimate is attached hereto as **Exhibit A**.

12. Plaintiffs required an updated binding estimate to reflect altered pick-up and delivery dates due to closing issues and updated their housing inventory list after disposing and donating various items.

13. An updated binding estimate provided by Trinity reflected an increased volume of 1,496 cf. (10,472 lbs.), and an increased moving fee of $13,381.41. A true and correct copy of Trinity's updated binding estimate is attached hereto as **Exhibit B**.
The new move date, reflected in the updated binding estimate, was scheduled for August 25, 2022, and August 26, 2022.

14. Jameson confirmed there would be no issues with the new move date, nor would there be any issues with a delivery date of September 1, 2022.

15. Jameson led the Plaintiffs to believe that the move would take place on August 25 and 26, 2022, to be complete by the end of the day on August 26, 2022.

16. Trinity, in its capacity as a moving broker, researched and recommended Rado as Plaintiffs' official moving company and carrier.

17. On August 24, 2022, Mr. Scheuer had not heard from Rado, so he called Trinity, who claimed the pick-up of Plaintiffs' belongings could be on either August 25, 2022, or August 26, 2022.

18. Mr. Scheuer reminded Trinity that the move would take two full days and the buyers of the Plaintiffs' Ohio home would be arriving on August 27, 2022.

19. Mr. Scheuer was given confirmation that the Rado movers would, in fact, be at his home on August 25, 2022, between 9:00 a.m. and 10:00 a.m.

20. On August 25, 2022, Mr. Scheuer received a text message advising that the moving truck would be at his Ohio home around 2:00 p.m. but received no response when he asked why the earlier 9:00 a.m. - 10:00 a.m. window would not be honored.

21. Finally, around 4:00 p.m. on August 25, 2022, Mr. Scheuer received a call from Rado driver, Tiz, advising that Rado movers were to complete another move before the Plaintiffs.

22. Rado employees, Tiz and Gordo (hereinafter "Rado employees"), finally arrived at the Plaintiffs' Ohio home after 5:00 p.m.

23. The Rado employees reassured Plaintiffs that the move would be completed on time by the end of the day on August 26, 2022.

24. Rado employees worked from approximately 8:30 p.m. to 10:30 p.m. on August 25, 2022.

25. At his own expense, Mr. Scheuer arranged for the Rado employees' transportation to a local hotel as the Rado employees had not made their own arrangements in advance.

26. Before leaving Plaintiffs' Ohio residence the night of August 25, 2022, Rado employees assured Plaintiffs that they would be back early the next morning to complete the move.

27. Despite this promise, Rado employees did not arrive to the Plaintiffs' Ohio residence until 11:00 a.m. on August 26, 2022.

28. The Rado employees proceeded to work, but not without behaving in an unprofessional manner involving profanities and threats of walking off the job.

29. At one point, Plaintiffs learned that a Rado employee left their Ohio residence for two hours to hire someone at Home Depot to assist with the move, further delaying the moving process.

30. On another occasion, a Habitat for Humanity truck was unable to pick up donation items from the Plaintiffs' Ohio residence because a Rado employee refused to reposition the Rado truck resulting in Plaintiffs' payment of $450.00 to a junk removal service to pick up the items intended to be donated to Habitat for Humanity.

31. At 4:00 p.m. on August 26, 2022, there was still a vast amount of work to be completed by Rado Employees.

32. At that point, Mr. Scheuer began working alongside the Rado employees in an effort to get the move completed on time.

33. Around 3:30 a.m. on the morning of August 27, 2022, Mr. Scheuer and the Rado employees were still working when Rado employees approached Mr. Scheuer with Rado's Interstate Bill of Lading Contract ("Rado Contract") now that they had a "better feel" for the amount of property they were moving. A true and correct copy of Rado's contract is attached hereto as **Exhibit C**.

34. The Rado Contract reflected a total price of $34,132.30, nearly three times the amount listed in Trinity's initial and updated estimates. The total price listed in the Rado Contract was based, in part, on a volume of household items amounting to 3,800 cf., roughly double the two prior estimates from Trinity.

35. The Rado Contract and associated price increase was not provided Plaintiffs until after work had begun and after Plaintiffs' possessions were already loaded on the truck.

36. Mr. Scheuer was also informed at this time that his belongings would not arrive to his Florida residence by September 1, 2022, as previously promised by Jameson.

37. Out of fear Plaintiffs possessions would not arrive on time, they agreed to a $5,700 "expedited delivery charge" to guarantee September 1, 2022, delivery.

38. Mr. Scheuer and the Rado employees continued to work throughout the night and into the morning, and the move was almost complete when the buyer of the Ohio residence and her cleaning crew arrived at the property at 8:00 a.m. on August 27, 2022.

39. When Mr. Scheuer received the final Rado paperwork, he was told by a Rado employee that the amount reflected in the Rado Contract was the final price if the Plaintiffs wanted their belongings delivered.

40. Mr. Scheuer was also informed that the Plaintiffs' belongings would not be delivered by September 1, 2022, despite the expedited delivery charge.

41. The Plaintiffs' property finally arrived at their Florida home on September 3, 2022, with no unloading crew.

42. The unloading crew arrived at the Plaintiffs' Florida home on the morning of September 4, 2022.

43. At that time, Rado employee, Andre, demanded the full balance before he would unload any property, including the $5,700 expedited delivery charge that was never honored.

44. Plaintiffs complied and paid the full balance for a total payment of $34,058.13

45. While unpacking their belongings, Plaintiffs discovered damage to various items.

## COUNT I
### Violation of U.S. Code of Federal Regulations, Title 49 §375.401 et al.
### (Against Rado Express Logistics, Inc.)

46. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

47. Title 49 §375.401 et al. of the U.S. Code of Federal Regulations ("Title 49") provides mandatory regulations to be followed by shipping and moving companies like Rado.

48. Pursuant to Title 49, a binding estimate guarantees that the customer, Plaintiffs, cannot be required to pay more than the amount on the binding estimate, unless the customer adds additional items to their shipment or requests additional services.

49. Pursuant to Title 49, even if a binding estimate necessitates an update because the customer adds additional items to their shipment or requests additional services, the customer and the mover, Rado, must negotiate a new binding estimate before the mover loads the shipment.

50. Pursuant to Title 49, if the mover does not provide the customer a new binding estimate in writing or agree in writing to convert the binding estimate to a non-binding estimate before customer's goods are loaded, the original binding estimate is reaffirmed.

6

51. Pursuant to Title 49, the mover should not charge or collect more than the amount of the original binding estimate at delivery for the quantities and services included in the estimate.

52. Trinity provided a binding estimate of $13,381.41 to the Plaintiffs after receiving a detailed inventory of the items located in their Ohio residence.

53. Plaintiffs did not add additional items to their shipment or request additional services from Rado.

54. Even if the Plaintiffs had added additional items to their shipment or requested additional services, Rado was required to provide a new binding estimate <u>before</u> loading the shipment, as mandated by Title 49.

55. Instead, Rado approached the Plaintiffs with an updated estimate at 3:00 a.m. on August 27, 2022, after Rado already loaded the shipment.

56. Rado is bound by the $13,381.41 estimate under Title 49, and the Plaintiffs are entitled to reimbursement in the amount of $20,676.72, accounting for the difference between the binding estimate and the Rado Contract.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Rado Express Logistics, Inc. for violation of U.S. Code of Federal Regulations, Title 49 §375.401 et al. and for any and all civil and criminal penalties provided under the statute.

## COUNT II
### <u>CARMACK AMENDMENT, 49 U.S.C. Section 14706 *et seq*.</u>
### <u>(Against Rado Express Logistics, Inc.)</u>

57. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

58. The federal Carmack Amendment regulates the relationship between owners of goods under shipment, Plaintiffs, and shipping companies, Rado.

7

59. The Plaintiffs incurred at least $2,000.00 worth of damage to their property caused by Rado.

60. The damage to the Plaintiffs' property occurred while the property was in Rado's care.

61. Plaintiffs are able to establish the value of the damaged goods.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Rado Express Logistics, Inc. for violations under the Carmack Amendment for damages caused to their property by Rado and any other relief the Court deems proper.

## COUNT III
## FRAUDULENT MISREPRESENTATION
## (Against Rado Express Logistics, Inc.)

62. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

63. To establish a fraudulent misrepresentation claim, Plaintiffs must show (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the Plaintiff resulting from such reliance.

64. Rado fraudulently inflated the Plaintiffs' binding estimate and presented a new estimate after the property had already been loaded.

65. Particularly, the new estimate in the Rado Contract contained improper and deceptive charges including but not limited to a fuel surcharge of 13% which had already been included in Trinity's binding estimate.

66. Rado had no reason to increase the prior estimate of $13,381.41 to $34,132.30 as Plaintiffs did not add additional items to their shipment that were not already included in Trinity's binding estimate.

67. Rado knew that the inflated price in the Rado Contract was false and deceptive.

68. Rado intended the Plaintiffs to act by paying the inflated and deceptive price.

69. Plaintiffs paid the increased price in the Rado Contract, particularly since Rado held the Plaintiffs' property hostage and would not release the property without full payment.

70. Further, Rado charged Plaintiffs $5,700.00 "expedited delivery" charge to guaranteed delivery on September 1, 2022.

71. Rado knew that it could not guarantee delivery by or on September 1, 2022.

72. Rado intended the Plaintiffs to act by paying the "expedited delivery" charge under the false representation that the Plaintiffs property would be delivered by September 1, 2022.

73. Plaintiffs paid the "expedited delivery" charge under the belief their property would be delivered by September 1, 2022.

74. Plaintiffs sustained damages caused by Rado's fraudulent misrepresentations.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Rado Express Logistics, Inc. for fraudulent misrepresentation and request that this Court award them monetary damages resulting from the fraudulent misrepresentation and any other relief this Court deems proper.

### COUNT IV
### VIOLATIONS OF THE ICFA, 815 ILCS 505/1 *et seq.*
### (Against Rado Express Logistics, Inc.)

75. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

9

76. To prevail on a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, a plaintiff must prove: (1) an unfair or deceptive act or practice by the defendant; (2) the Defendant's intent that the plaintiff rely on the act or the practice; and (3) the occurrence of the act or practice during a course of conduct involving trade or commerce.

77. Rado fraudulently inflated the Plaintiffs binding estimate and presented a new estimate after the property had already been loaded.

78. Particularly, the new estimate in the Rado Contract contained improper and deceptive charges including but not limited to a fuel surcharge of 13% which had already been included in Trinity's binding estimate.

79. Rado had no reason to increase the prior estimate of $13,381.41 to $34,132.30 as Plaintiffs did not add additional items to their shipment that were not already included in Trinity's binding estimate.

80. Rado intended the Plaintiffs to act by paying the inflated and deceptive price.

81. Plaintiffs paid the increased price in the Rado Contract, particularly since Rado held the Plaintiffs' property hostage and would not release the property without full payment.

82. Further, Rado charged Plaintiffs $5,700.00 "expedited delivery" charge to guaranteed delivery on September 1, 2022.

83. Rado intended the Plaintiffs to act by paying the "expedited delivery" charge under the false representation that the Plaintiffs property would be delivered by September 1, 2022.

84. Plaintiffs paid the "expedited delivery" charge under the belief their property would be delivered by September 1, 2022.

85. Rado's fraudulent and deceptive practices occurred during a course of conduct involving trade or commerce.

86. Rado engaged in fraudulent misrepresentation and deceptive business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Rado Express Logistics, Inc. for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and request that this Court award them any and all damages provided under the statue, including treble damages and attorney's fees.

## COUNT V
## BREACH OF CONTRACT
## (Against Rado Express Logistics, Inc.)

87. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

88. A contract is enforceable where there is an offer, acceptance, consideration, and mutuality.

89. To prevail in a breach of contract action, Plaintiffs must prove: (1) the existence of a valid enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) injury to the plaintiffs as a result of the breach.

90. A valid and enforceable contract existed between Rado and Plaintiffs. See **Exhibit C.**

91. Plaintiffs performed by paying the full Rado Contract price.

92. Rado breached its Contract when it failed to load the Plaintiffs' property within two days and arrived unprepared with only two employees to the Plaintiffs' Ohio residence, requiring Mr. Scheuer to contribute to Rado's labor and work throughout the night.

93. Rado breached its Contract when it failed to deliver the Plaintiffs' property by September 1, 2022, despite charging the Plaintiffs a $5,700.00 expedited delivery charge.

94. Plaintiffs incurred monetary damages as a result of Rado's breach of contract.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Rado Express Logistics, Inc. for breach of contract and request that this Court award them monetary damages resulting from the breach and any other relief this Court deems proper.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
## (Against Trinity Relocation Group, LLC)

95. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

96. To establish a breach of fiduciary duty, Plaintiffs are required to show (1) that a fiduciary duty exists; (2) that the duty was breached; (3) causation; and (4) injury.

97. Trinity had a fiduciary relationship with the Plaintiffs as it was in a position of superior knowledge and skill to which Plaintiffs relied on.

98. Trinity owed the Plaintiffs a duty to adequately research and recommend a reputable and reliable carrier.

99. Trinity breached this duty when it recommended a carrier, Rado, that was clearly engaged in fraudulent and deceptive conduct.

100. Further, Trinity reassured the Plaintiffs that there would be no problem with an August 25, 2022- August 26, 2022, pick-up date, and delivery date of September 1, 2022.

101. Trinity breached its fiduciary duty when it failed to recommend a carrier who could execute the move in the time period the Plaintiffs requested, requiring Mr. Scheuer to work through the night and assist Rado employees with the move.

102. Finally, Trinity owed the Plaintiffs a duty to provide an accurate binding estimate based on the detailed inventory list of household items Plaintiffs provided Trinity.

103. Trinity provided the Plaintiffs a binding estimate of $13,381.41 with an estimated volume of 1,496 cf.

104. Although Plaintiffs did not add any additional items for shipment during the move, Rado's improper estimate amounted to $34,132.30 with an estimated volume of 3,800 cf., which was nearly double Trinity's estimate.

105. Plaintiffs incurred damages caused by Trinity's breach of fiduciary duty.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Trinity Relocation Group, LLC, for breach of fiduciary duty and request that this Court award them monetary damages resulting from the breach and any other relief this Court deems proper.

## COUNT VII
## FRAUDULENT MISREPRESENTATION
## (Against Trinity Relocation Group, LLC)

106. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

107. To establish fraudulent misrepresentation, Plaintiffs are required to show that (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the Plaintiff resulting from such reliance to establish a fraudulent misrepresentation claim

108. Trinity underquoted the binding estimate of $13,381 in order to secure the Plaintiffs' business.

109. Trinity misrepresented that the property would be delivered by September 1, 2022 when it knew that it could not deliver on this representation.

110. Trinity misrepresented that a carrier would execute the move within two days when it knew that it could not deliver on this representation.

111. Trinity knew the Plaintiffs were on time restrictions and would be forced to accept a later inflated and improper estimate.

112. Plaintiffs relied on Trinity's misrepresentation that their binding estimate would not substantially change.

113. Plaintiffs relied on Trinity's misrepresentation that their binding estimate was accurate based on a detailed inventory provided to Trinity.

114. Plaintiffs relied on Trinity's misrepresentation that a carrier would execute their move within two days without the assistance of Mr. Scheuer.

115. Plaintiffs relied on Trinity's misrepresentation that their property would be delivered by September 1, 2022.

116. Plaintiffs sustained damages resulting from their reliance on Trinity's misrepresentations.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Trinity Relocation Group, LLC, for fraudulent misrepresentation and request that this Court award them monetary damages resulting from the fraudulent misrepresentation any other relief this Court deems proper.

**COUNT VIII**
**VIOLATIONS OF THE ICFA, 815 ILCS 505/1 *et seq*.**
**(Against Trinity Relocation Group, LLC)**

117. Plaintiffs incorporate and reallege paragraphs 1-45 as if fully set forth herein.

118. To prevail on a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, plaintiffs must prove (1) an unfair or deceptive act or practice by the defendant; (2) the Defendant's intent that the plaintiffs rely on the act or the practice; and (3) the occurrence of the act or practice during a course of conduct involving trade or commerce.

119. Trinity underquoted the binding estimate of $13,381 in order to secure the Plaintiffs' business.

120. Trinity misrepresented that the property would be delivered by September 1, 2022.

121. Trinity misrepresented that a carrier would execute the move within two days without the assistance of Mr. Scheuer.

122. Trinity knew the Plaintiffs were on time restrictions and would be forced to accept a later inflated and improper estimate.

123. Plaintiffs relied on Trinity's misrepresentation that their binding estimate would not substantially change.

124. Plaintiffs relied on Trinity's misrepresentation that their binding estimate was accurate based on a detailed inventory provided to Trinity.

125. Plaintiffs relied on Trinity's misrepresentation that a carrier would execute their move within two days without the assistance of Mr. Scheuer.

126. Plaintiffs relied on Trinity's misrepresentation that their property would be delivered by September 1, 2022.

127. Trinity's fraudulent and deceptive practices occurred during a course of conduct involving trade or commerce.

128. Plaintiffs sustained damages resulting from their reliance on Trinity's misrepresentations.

WHEREFORE, the Plaintiffs, Glenn Scheuer and Linda Scheuer, pray that this Court enter judgment in their favor and against Trinity Relocation Group, LLC, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. and request that this Court award them any and all damages provided under the statue, including treble damages and attorney's fees.

           Respectfully submitted,

           **LINDSAY, PICKETT & POSTEL, LLC**

           By: */s/ Christopher J. Pickett*
           One of the attorneys for Plaintiffs

Christopher J. Pickett (ARDC #6287096)
cpickett@lpplawfirm.com
Haley M. Loutfy (ARDC #6330052)
hloutfy@lpplawfirm.com
**LINDSAY, PICKETT & POSTEL, LLC**
200 W. Madison St., Suite 3850
Chicago, Illinois 60606