THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| GLENN SCHEUER and LINDA SCHEUER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) No. 23-cv-531 | |
| | ) | |
| RADO EXPRESS LOGISTICS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT RADO EXPRESS LOGISTICS, INC.'S MOTION TO DISMISS
COUNTS I THROUGH V OF PLAINTIFFS' COMPLAINT**

**NOW COMES** Defendant, RADO EXPRESS LOGISTICS, INC. (hereinafter "RADO"),

by and through its attorneys, MOSKOVIC & ASSOCIATES, LTD., and moves this Court to dismiss

Counts I through V of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the FRCP.  In support of

this Motion, Defendant RADO states as follows:

**I.  BACKGROUND**

Plaintiff filed an eight Count Complaint alleging various violations against RADO and

TRINITY RELOCATION GROUP, LLC (hereinafter "TRINITY") relating to an interstate move

scheduled by Plaintiffs for the purpose of moving Plaintiffs' residential belongings from their

home in Fairfield, Ohio to Vero Beach, Florida.  (See Complaint, **Ex.1**, incorporated herein by

reference, including all exhibits attached thereto).  The Counts against RADO include Violation of

Title 49 Section 375.401 et seq. (Count I), Damages sought under the Carmack Amendment, 49

U.S.C. Section 14706 (Count II), Fraudulent Misrepresentation (Count III), Violation of the

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count

IV), and Breach of Contract (Count V).

Plaintiffs initially contacted TRINITY, an Interstate Broker, and signed a Binding Moving

Estimate with TRINITY on June 7, 2022 (Ex. A to Ex.1), and, due to changes in their moving

plans, signed a subsequent Binding Moving Estimate with TRINITY on August 22, 2022 (Ex. B to

Ex.1).  These Binding Estimates were based on a list of items and services requested, which were provided to TRINITY by Plaintiffs.  Plaintiffs waived the option to have a physical survey in-home estimate of the household goods, which is allowed by law, and they agreed to receive a non-physical survey, with the understanding that the Estimates were based on the list submitted by them. (See p. 8 of Exhibits A and B to Ex.1 and p. 5 of Ex. C to Ex.1).  TRINITY's Binding Estimates provide that TRINITY would coordinate and arrange for the transportation of Plaintiffs' household goods by motor carrier. (See p. 4 of Ex. A to Ex.1).  The initial Binding Estimate provided that the motor carrier's estimated pick-up date would be July 27 and July 28, 2022, although the Estimate provides in multiple places that pick-up and delivery dates are never guaranteed. (See pgs. 1 and 6 of Ex. A to Ex.1).  In addition, the Estimates provide in more than one place that the Binding Estimate will change if the customer orders additional services, or adds items, cubic feet or weight to be moved.  (See pgs. 3, 4, 6, 7 and 8 of Ex. A to Ex.1).  The subsequent Binding Estimate, which appears to be the governing Estimate between TRINITY and Plaintiffs, provided that the estimated pick-up would occur on August 25 and August 26, 2022, although, again, pick-up and delivery dates were not guaranteed per the Estimate terms.  (See pgs. 1 and 6 of Ex. B to Ex.1).

RADO was the company that TRINITY arranged to serve as the motor carrier for Plaintiffs' move.  RADO completed and presented an initial Bill of Lading Contract and Order for Services, reflecting a higher amount for the moving service than the most recent Binding Estimate from TRINITY.  (See p. 2 of Ex. C to Ex.1).  This resulted from Plaintiffs' addition of services, items, cubic feet, and weight, as estimated by TRINITY.  This potential increase in Estimate was provided for in TRINITY's Binding Estimates.  (See pgs. 3, 4, 6, 7, and 8 of Ex. B to Ex.1).  Plaintiffs signed RADO's initial Bill of Lading Contract and Order for Services, approving the new amount, prior to RADO beginning moving services on August 25, 2022.  (See Plaintiff's

2

signature on p. 2 of Ex. C to Ex.1). This signature also authorized RADO to begin moving services. (See Plaintiff's signature on p. 2 of Ex. C to Ex. 1). As provided by law, and as provided for in the TRINITY Binding Estimates (at p. 6 of Ex. B to Ex.1), on August 26, 2022, prior to RADO loading the truck, Plaintiff signed a Revised Written Estimate which rescinded the previous Estimate based on services, items, cubic feet and weight added by Plaintiffs. (See p. 4 of Ex. C to Ex.1). Plaintiff's signature and initials on the Revised Estimate reflect their agreement to the terms of the Revised Estimate and their approval of the Revised Estimate **prior to loading**. (See p. 4 of Ex. C to Ex.1). Further, the RADO Contract and Revised Estimate terms, signed by Plaintiffs, provide in multiple places that pick-up and delivery dates are not guaranteed. (See pgs. 2, 4, and 13 of Ex. C to Ex. 1). In fact, Plaintiffs signed a separate document as part of the RADO Contract that specifically details that the first available delivery date of September 1, 2022 is in no way guaranteed and only denotes the first possible delivery date. (See p. 13 of Ex. C to Ex. 1).

## II. ARGUMENT

Rule 12(b)(6) requires the movant to show entitlement to dismissal. Marcure v. Lynn, 992 F.3d 625 (7th Cir. 2021) citing Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020); see also Charles Alan Wright & Arthur R. Miller, 5A Federal Practice and Procedure § 1357 (3d ed. 2019). ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists."). No legally cognizable claim for relief exists on any of the claims brought against RADO. The RADO Contract and Revised Estimate terms, signed and agreed upon by Plaintiffs, and attached to Plaintiffs' Complaint at Law as Exhibits, establish that no violations of law or contract exist. Plaintiffs are now complaining about the very services and charges they specifically agreed upon in the governing Contract and Revised Estimate. Plaintiffs' claims against RADO must be dismissed with prejudice pursuant to Rule 12(b)(6).

## A.  ARGUMENTS APPLICABLE TO MULTIPLE COUNTS

First, the claims brought in Counts I, III, IV and V are preempted by the Carmack Amendment and must be dismissed with prejudice.  An interstate carrier's responsibility is governed by the Carmack Amendment to the Interstate Commerce Act.  The Carmack Amendment supersedes all states laws as to the rights and liabilities created by such transactions. Adams Express Co. v. Croninger, 226 U.S. 491, 505 (1913).  Claims for breach of contract, deceptive trade practices, attorney fees and the like are preempted by the Carmack Amendment. Air Products & Chem., Inc. v. Ill. Cent. Gulf R.R. Co., 721 F.2d 483,484-85 (5th Cir. 1983) (holding the Carmack Amendment provides an exclusive remedy for a breach of contract of carriage provided by a bill of lading).

The Carmack Amendment was created by Congress in 1906 to create a uniform national policy regarding interstate carriers' liability for property loss or damage.  New York, New Haven & Hartford Railroad Co. v. Nothnagle, 346 U.S. 128, 131 (1953).  The liability of motor carriers for loss and damage arising from an interstate shipment is exclusively governed by the Carmack Amendment.  Hoskins v. Bekins Van Lines, LLC, 343 F.3d 769, 778 (5th Cir. 2003).  The Carmack Amendment has been held to apply to delay claims as well as damage claims.  The U.S. Supreme Court has held that the duty to transport goods with reasonable dispatch is an integral part of the normal undertaking of the carrier.  New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange, 240 U.S. 34, 38-39, 36 S. Ct. 230, 232 (1916) (holding "the words 'any loss, damage, or injury to such property,' caused by the … carrier …  are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination.  It is not necessary, nor is it natural, in view of the general purpose of the statute, to take the words 'to the property' as limiting the word 'damage' as well as the word 'injury,' and thus as rendering the former wholly superfluous. It is

4

said that there is a different responsibility on the part of the carrier with respect to delay from that

which exists where there is a failure to carry safely.  But the difference is with respect to the

measure of the carrier's obligation; the duty to transport with reasonable dispatch is nonetheless an

integral part of the normal undertaking of the carrier. And we can gather no intent to unify only a

portion of the carrier's responsibility.")

The Supreme Court in Atchison, T. & S.F. Ry. Co. v. Harold, held "it is not disputable

that…the Carmack Amendment…was an assertion of the power of Congress over the subject of

interstate shipments, the duty to issue bills of lading, and the responsibilities thereunder,

which…excluded state action."  Atchison, T. & S.F. Ry. Co. v. Harold, 241 U.S. 371, 377-78

(1916).  The subject of interstate shipments is regulated by Congress and the liability of a carrier

who provides interstate transportation or other service is governed exclusively by the Carmack

Amendment.  Id.  Additionally, the Carmack Amendment preempts claims for overcharging

freight rates, and well as for claim handling by carriers or their representatives.  Duerrmeyer v.

Alamo Moving and Storage One, Cor., 49 F.Supp.2d 934, 936 (W.D. Tex. 1999); Rini v. United

Van Lines, Inc. 104 F.3d 502, 506 (1st Cir. 1997); Hanlon v. UPS, 132 F.Supp.2d 503, 504 (N.D.

Tex. 2001).  Last, Plaintiffs seek attorney fees under Count IV of their Complaint.  The Carmack

Amendment preempts any state law basis for recovery of attorney fees.  Accura Sys., Inc. v.

Watkins Motor Lines, Inc. 98 F.3d 874, 876 (5th Cir. 1996).  Attorney fees are not available in

Carmack claim cases.  Advantage Transp., Inc. v. Freeways Exp., L.L.C, No. 4:08-CV-206, 2008

WL 5062672 at *3 (N.D. Tex. 2008).  Counts I, III, IV, and V and the relief sought therein are

preempted by the Carmack Amendment and must be dismissed.

Second, the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C.

Section 14501, preempts state regulation of the trucking industry, including state law private

claims.  Enbridge Energy, LP v. Imperial Freight Inc., No. CV H-14-2615, 2019 WL 2858881, at

*2 (S.D. Tex. April 25, 2019). The FAAAA preempts state law claims for breach of contract against carriers. See <u>Wise Recycling, LLC v. M2 Logistics</u>, 943 F. Supp. 2d 700, 704-05 (N.D. Tex 2013). Plaintiffs' claims under Counts III, IV, and V are preempted by the FAAAA as these claims are private state statutory and common law claims. As such Counts III, IV, and V should be dismissed with prejudice.

Last, Plaintiffs' claims in Counts I through V must be dismissed as the Agreement between RADO and Plaintiffs provides that, as a condition precedent to recovery, all claims must first be filed in writing to <u>support@radoexpress.com</u>. (See p. 12 of Ex. C to Ex.1). Plaintiffs never made any such claim to RADO prior to the filing of this lawsuit, and therefore, it is appropriate that all Counts of Plaintiffs' Complaint against RADO be dismissed with prejudice.

### B. COUNT I - Violation of Title 49 Section 375.401 et seq.

Plaintiffs claim in Count I that RADO violated Title 49, Section 375.401. Plaintiffs first claim they did not add additional items to their shipment or request additional services and that therefore, RADO did not have the right to present them with a Revised Estimate. Plaintiffs then claim that even if they added items or services, RADO did not present the Revised Estimate to them prior to the truck being loaded. Plaintiffs claim must fail. Plaintiff repeats and incorporates herein the arguments above in Sections I and II(A). Further, Plaintiff signed the Revised Written Estimate (p. 4 of Ex. C to Ex.1) on August 26, 2022, acknowledging that they were signing a Revised Estimate based on additional goods or services being added, acknowledging what those additional goods and services were, and acknowledging that the Revised Estimate supersedes all other Estimates. In fact, Plaintiffs initialed the box on the Revised Estimate acknowledging that they approved the revised total estimate **prior to loading**. (See p. 4 of Ex. C. to Ex. 1).

Specifically, the RADO Revised Estimate indicates that the original TRINITY Estimate Tariff based on 1496 cubic feet is being rescinded and the new Estimate is based on 3800 cubic

6

feet, reflecting an additional 2304 cubic feet, which substantiates RADO's right to revise the

original Estimate per the Estimate terms. RADO's Descriptive Inventory lists all of Plaintiffs

items that were packed and moved by RADO. (See pgs. 6-8 of Ex. C to Ex. 1). It is obvious from

the Descriptive Inventory that more items and boxes were packed and moved by RADO than were

initially included in TRINITY's Estimates. Further, RADO's Revised Estimate reflects a new

packing material charge of $3,000.00, instead of the $1,340.00 reflected on the TRINITY Estimate

or the $3,800.00 estimated by RADO on its Original Contract and Order for Services. This

increase in packing material charge from TRINITY's Estimate reflects that additional packing

material would be required due to the increase in amount of goods/items; it even reflects a

decrease from RADO's original estimate of $3,800.00 for packing materials.

Both the TRINITY Estimate and the RADO Revised Estimate reflect the same 13% Fuel

Surcharge, in contradiction to Plaintiffs claim that RADO charged the Fuel Surcharge twice (since

the Fuel Surcharge was percentage based, the actual amount of the Surcharge increased since the

amount of the Tariff increased, but the 13% fee was not charged twice). The Estimate from

TRINITY reflected a Binding Estimate Fee of $6,512.00, while the Revised Estimate reflected the

same Binding Estimate Fee of $6,512.00 plus an additional $300.00 charge for stairs. RADO had

a right to add the additional service charge for stairs which were determined to be a necessary

extra service after RADO arrived at Plaintiffs' home. (See p. 2, 4, and 9 of Ex. C to Ex. 1).

RADO's Original and Revised Estimate also reflected a charge of $5,700.00 for expedited

shipping, which was not reflected on the TRINITY estimate. The $5,700.00 charge was added

because Plaintiffs were in a hurry to get their items delivered to their new home as soon as

possible. Nowhere in RADO's Original or Revised Estimate does it state that this expedited

shipping fee guarantees delivery on September 1, 2022. The fee is simply a fee charged by RADO

to expedite the delivery to as close to September 1 as possible, rather than the standard 30-day

window RADO had to deliver the items.  (See p. 2, 4, and 13 of Ex. C to Ex 1).

The documents, which were signed by Plaintiffs, could not have more clearly stated that September 1 was not a guaranteed delivery date.  (See pgs. 1 and 6 of TRINITY's Estimates- Ex. A and B to Ex. 1; see also pgs. 2, 4, and 13 of Ex. C to Ex. 1 - RADO Contract and Revised Estimate).  RADO's Revised Estimate included an additional service fee of $650.00 for Bulky Items and Grandfather Clock Service, which had not been charged on the TRINITY Estimate.  This was an added service that was determined to be necessary after RADO arrived at Plaintiffs' home and assessed the needed services.  The RADO Revised Estimate reflected the same Manager Discount/Early Reservation Discount of $2,500.37 that was reflected on the TRINITY Estimate.

In summary, specifically addressing the allegations of Count I, Plaintiffs did, in fact, add items, cubic feet, weight, and additional services which were in addition to that accounted for in the TRINITY Estimates.  RADO had a right per the terms of the TRINITY Estimates and its own Contract and Revised Estimate to change the Estimate based on these additions.  Plaintiffs signed off on each and every one of TRINITY's Estimates, as well as RADO's Contract and Revised Estimate.  Plaintiffs cannot now claim that the terms of these documents, and their signatures affixed thereto, somehow should be ignored and rendered meaningless.

Regarding Plaintiffs' allegation that the Revised Estimate was presented after loading of the truck, it is clear that Plaintiffs signed RADO's Revised Estimate **prior to loading**.  (See p. 4 of Ex. C to Ex. 1).  This Court cannot simply ignore the evidence of the Complaint Exhibits before it, which indicates the loading had not started at the time Plaintiffs signed the Revised Estimate.  The Court must look to the four corners of the parties' agreement and must not consider any allegations to the contrary in the Complaint, as such statements constitute inadmissible parole evidence.  As such, dismissal with prejudice of Plaintiffs' Count I against RADO is appropriate.

8

### C.  COUNT II - Carmack Amendment, 49 U.S.C. Section 14706

Plaintiffs allege very generally in Count II that Defendants are entitled to $2,000.00 worth of damage to their property pursuant to the Carmack Amendment, 49 U.S.C. 14706.  Plaintiffs, however, fail to meet the pleading requirements in that there are no specifications in Count II regarding the property damaged, or how Plaintiffs arrived at a figure of "at least $2,000.00." Further, Plaintiffs failed to acknowledge any damage to their property at delivery.  (See Descriptive Inventory, pgs. 6-8 of Ex. C to Ex. 1).  The Descriptive Inventory notes that the omission of damage symbols indicates good condition of the items at delivery.  Therefore, Plaintiffs are not entitled to claim any damage to their property against RADO and dismissal of Count II with prejudice is proper under Rule 12(b)(6).

Further, Plaintiffs signed a Waiver of Full Replacement Value Protection which limits liability of RADO to $.0.60 per pound per article.  (See pgs. 10 and 14 of Ex. C to Ex 1). Plaintiffs are, therefore, unable to claim $2,000.00 in full replacement value for any allegedly damaged items.

### D.  COUNT III - Fraudulent Misrepresentation

In Count III, Plaintiffs claim that RADO fraudulently inflated its Estimate and presented the new Revised Estimate after the property had been loaded.  Plaintiffs also claim that the 13% Fuel Surcharge was charged twice – once in TRINITY's Estimate and again in RADO's. Plaintiffs claim that they did not add items after TRINITY's Estimate.  Plaintiffs allege that RADO charged $5,700.00 for expedited delivery when RADO allegedly knew they could not guarantee delivery by September 1, 2022.

Plaintiffs claim for Fraudulent Misrepresentation must fail.  Plaintiff hereby repeats and incorporates the statements and argument contained in Sections I and II(A) and (B) above as if fully set forth herein.

In summary, and specifically addressing Plaintiffs' allegations:

First, Plaintiffs did, in fact, add items, cubic feet, weight, and additional services which were in addition to that accounted for in the TRINITY Estimates. RADO had a right, per the terms of the TRINITY Estimates and its own Contract and Revised Estimate, to change the Estimate based on these additions. Plaintiffs signed off on each and every one of TRINITY's Estimates, as well as RADO's Contract and Revised Estimate. Plaintiffs cannot now claim that the terms of these documents, and their signatures on these documents, somehow should be ignored.

Second, RADO did not load the truck prior to obtaining the signature and authorization from Plaintiffs on the Revised Estimate. Plaintiffs' initials on the Revised Estimate indicate that the Revised Estimate charges were approved prior to loading the truck. This Court cannot simply ignore the terms of the Revised Estimate and the evidence before it, which indicate the loading had not started at the time Plaintiffs signed the Revised Estimate.

Third, the 13% Fuel Surcharge was not duplicated. It is evident from the TRINITY and RADO Estimates that the Fuel Surcharge was only added one time, the amount simply changed based on the increased tariff, which was in turn based on the increased cubic feet of items to be moved. Plaintiffs claim that the Fuel Surcharge was charged twice is simply not true.

Fourth, the Expedited Delivery charge was agreed to and paid by Plaintiffs in an effort to get the delivery as close to September 1 as possible, but it was not represented anywhere in the documents to be an override to the language of all the Estimates that delivery dates are never guaranteed. It was only an additional charge to shorten the delivery time, rather than having the standard delivery of within 30 days of the "First Available Date for Delivery" as noted on the documentation. In fact, the delivery was made to Plaintiffs' new home on September 3, rather than later in the month. The TRINITY and RADO Estimates all provide for the delivery to be

10

made up until September 30th. The Court cannot impose terms that are not contained in the agreements.

The Court must look to the four corners of the parties' agreement and must not consider any allegations in the Complaint to the contrary, as such statements constitute inadmissible parole evidence. As such, dismissal of Count III with prejudice pursuant to Rule 12(b)(6) is appropriate.

### E. COUNT IV - Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

Plaintiffs claim in Count IV that RADO fraudulently inflated its Estimate and presented the new Revised Estimate after the property had been loaded. Plaintiffs also claim that the 13% Fuel Surcharge was charged twice – once in TRINITY's Estimate and again in RADO's. Plaintiffs claim that they did not add items after TRINITY's Estimate. Plaintiffs allege that RADO charged $5700.00 for expedited delivery when they allegedly knew they could not guarantee delivery by September 1, 2022.

Plaintiffs claim under the Illinois Consumer Fraud and Deceptive Business Practices Act must fail. Plaintiff hereby repeats and incorporates the statements and argument contained in Sections I and II(A), (B), and (D) above as if fully set forth herein.

In summary, and specifically addressing Plaintiffs' allegations:

First, Plaintiffs did, in fact, add items, cubic feet, weight, and additional services which were in addition to that accounted for in the TRINITY Estimates. RADO had a right per the terms of the TRINITY Estimates and its own Contract and Revised Estimate to change the Estimate based on these additions. Plaintiffs signed off on each and every one of TRINITY's Estimates, as well as RADO's Contract and Revised Estimate. Plaintiffs cannot now claim that the terms of these documents and their signatures on these documents somehow should be ignored.

Second, RADO did not load the truck prior to obtaining the signature and authorization from Plaintiffs on the Revised Estimate. Plaintiffs' initials on the Revised Estimate indicate that

11

the Revised Estimate charges were approved prior to loading the truck. This Court cannot simply ignore the terms of the Revised Estimate and the evidence before it, which indicate the loading had not started at the time Plaintiffs signed the Revised Estimate.

Third, the 13% Fuel Surcharge was not duplicated. It is evident from the TRINITY and RADO Estimates that the Fuel Surcharge was only added one time, the amount simply changed based on the increased tariff, which was in turn based on the increased cubic feet of items to be moved. Plaintiffs claim that the Fuel Surcharge was charged twice is simply not true.

Fourth, the Expedited Delivery charge was agreed to and paid by Plaintiffs in an effort to get the delivery as close to September 1 as possible but was not represented anywhere in the documents to be an override to the language of all the Estimates that delivery dates are never guaranteed. It was only an additional charge to shorten the delivery time, rather than having the standard delivery of within 30 days of the "First Available Date for Delivery" as noted on the documentation. In fact, the delivery was made to Plaintiffs' new home on September 3, rather than later in the month. The TRINITY and RADO Estimates all provide for the delivery to be made up until September 30th. The Court cannot impose terms that are not contained in the agreements.

The Court must look to the four corners of the parties' agreement and must not consider any allegations in the Complaint to the contrary, as such statements constitute inadmissible parole evidence. As such, dismissal of Count IV with prejudice pursuant to Rule 12(b)(6) is appropriate.

### F. COUNT V - Breach of Contract

Plaintiffs claim in Count V that RADO breached the parties' agreement when it failed to load the Plaintiffs' property within two days and arrived unprepared and when it failed to deliver the property by September 1.

Regarding the allegation that RADO failed to load the property within two days, nowhere in

the TRINITY Estimates, RADO Contract and Order for Services, or RADO Revised Estimate -- all

of which were signed by Plaintiffs -- does it state that the loading of the property would be

accomplished within 2 days.  In fact, all documents reiterate in multiple places that pick-up dates

are not guaranteed.  TRINITY's most recent Binding Estimate provided that the requested move

date was August 25 and 26, 2022 although the Estimate provides in multiple places that pick-up and

delivery dates are never guaranteed. (See pgs. 1 and 6 of Ex. A to Ex. 1).  Further, RADO's Contract

and Order for Services also provides that pick up dates are not guaranteed.  (See pgs. 2 and 4 of Ex.

C to Ex. 1).  Although RADO did, in fact, arrive at Plaintiffs' property on August 25, 2022, the

requested moving date of Plaintiffs, nowhere in the Contract or Revised Estimate does it state that

all loading would be completed by August 26, 2022.  As such, Plaintiffs' claim for Breach of

Contract on this basis must fail.

Regarding Plaintiffs' claim that RADO was unprepared, and thereby in breach of its contract

with Plaintiffs by bringing only two employees, nowhere in RADO's Contract or Revised Estimate

does it provide for how many employees would be used in this move.  Plaintiff only assisted in the

labor, if at all, on his own choosing, and as a result of his impatience and rush to get out of the

property so as to have the property vacant by August 27, 2022 when the buyer and cleaning crew

were to arrive at the property.  As such, Plaintiffs' claim for Breach of Contract on this basis must

fail.

Regarding delivery of the property by September 1, 2022, nowhere in the TRINITY

Estimates, RADO'S Contract, or RADO's Revised Estimate does it state that September 1, 2022

was a guaranteed delivery date.  In multiple places in all documentation, signed by Plaintiffs, it is

stated and made abundantly clear that the "First Available Delivery Date" is not a guaranteed

delivery date.  The $5,700.00 expedited delivery charge was added because Plaintiffs were in a hurry

to get their items delivered to their new home as soon as possible.  Nowhere in RADO's Original or

13

Revised Estimate does it state that this expedited delivery fee guarantees delivery on September 1, 2022. The fee is simply a fee charged by RADO to expedite the delivery to as close to September 1, 2022 as possible, rather than the standard 30-day window RADO had to deliver the items. (See p. 2, 4, and 13 of Ex. C to Ex. 1). It could not have been more clear that September 1, 2022 was not a guaranteed delivery date. (See pgs. 1 and 6 of Ex. A and B to Ex. 1 - TRINITY's Estimates; see also pgs. 2, 4, and 13 of Ex. C to Ex. 1 - RADO Contract and Revised Estimate). As such, Plaintiffs' claim in Count V for Breach of Contract on this basis must fail.

### III. CONCLUSION

Based upon the foregoing facts, which demonstrate that Plaintiffs were in full agreement with the Revised Estimate and signed the Revised Estimate prior to loading, and pursuant to the foregoing applicable laws and the arguments, Plaintiffs' claims against RADO must be dismissed with prejudice pursuant to Rule 12(b)(6). Plaintiffs have failed to state a claim upon which relief may be granted. The contractual terms which bind the parties render Plaintiffs incapable of stating a viable claim under the law. Therefore, Counts 1 through V should be dismissed with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

WHEREFORE, Defendants pray and request that this Court grant its Motion to Dismiss pursuant and for any other relief this Court deems just and appropriate.

Respectfully Submitted,

MOSKOVIC & ASSOCIATES, LTD.

By: /s/ Alex Moskovic_____
Alex Moskovic

14

Alex Moskovic
MOSKOVIC & ASSOCIATES, LTD.
3233 N. Arlington Heights Road
Suite 303
Arlington Heights, IL 60004
Phone: (847) 797-1300
Fax: (847) 797-1350
ARDC No. 6212060