THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENN SCHEUER and LINDA SCHEUER, ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> RADO EXPRESS LOGISITICS, INC. and ) <br> TRINITY RELOCATION GROUP, LLC, ) <br> ) <br> *Defendants.* ) <br> ) <br> ) | Case No. 1:23-cv-531 <br><br> Hon. Judge John Robert Blakey <br> Hon. Mag. Judge Sunil R. Harjani |

**PLAINTIFFS' RESPONSE TO RADO'S MOTION TO DISMISS**

Plaintiffs, GLENN SCHEUER and LINDA SCHEUER (collectively "Plaintiffs"), by and through their attorneys, Christopher J. Pickett, Haley M. Loutfy, and Aisha Abid of LINDSAY, PICKETT & POSTEL, LLC, respond to the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), filed by Defendant, RADO EXPRESS LOGISITICS, INC. ("Rado"), stating as follows:

## INTRODUCTION

This case arises from Rado's predatory moving practices. Rado's motion should be denied because: (I) the Carmack Amendment and the Federal Aviation Administration Authorization Act ("FAAAA") only preempt claims for damage to property and substantial relationships with carrier rates, routes or services – they do not absolve Rado of all liability for fraud; (II) Rado's motion fails to accept Plaintiffs' well-pleaded facts as true, as it must, and instead attempts to introduce contradictory facts; (III) Plaintiffs have sufficiently plead the elements for violation of the Carmack Amendment; and (IV) Rado's purported condition precedent to filing a claim is unenforceable and, in any event, only applies to claims for property damage, not Rado's fraudulent and predatory practices.

## STATEMENT OF FACTS

On or about June 7, 2022, Plaintiffs contacted transportation broker, Trinity, to arrange their move from Fairfield, Ohio to Vero Beach, Florida. [Dkt. 1, ¶ 8] Plaintiffs spoke to Trinity employee, William Jameson ("Jameson"), who assisted Plaintiffs in evaluating their household goods for purposes of a binding moving estimate. [Dkt. 1, ¶ 9] After Plaintiffs provided Trinity with a detailed inventory of their household goods, Trinity provided an initial binding estimate reflecting a total moving fee of $12,177.00. [Dkt. 1, ¶ 11; Dkt. 1-1] This was later changed in an updated binding estimate to a total moving fee of $13,381.41. [Dkt. 1, ¶ 12-13; Dkt. 1-2] Plaintiffs' move date was scheduled for August 25 and 26, 2022, and Jameson verified that the move would be completed by that date. [Dkt. 1, ¶ 13-15] Plaintiffs communicated their urgency as the buyers of Plaintiffs' home would be arriving on August 27, 2022. [Dkt. 1, ¶ 18] Jameson also confirmed there would be no issues with a delivery date of September 1, 2022. [Dkt. 1, ¶ 14]

Trinity researched and recommended Rado as Plaintiffs' official moving company and carrier. [Dkt. 1, ¶ 16] Rado movers arrived late to Plaintiffs' Ohio home on August 25, 2022, worked briefly, then returned late on August 26, 2022. [Dkt. 1, ¶ 19-27] In an effort to get the move complete before the new owners took possession on August 27, 2022, Mr. Scheuer began working alongside the Rado movers. [Dkt. 1, ¶ 32] After hours of exhausting work and with the move still not complete, at approximately 3:30 a.m. on August 27, 2022, Rado employees approached Mr. Scheuer with the Rado Contract which reflected a substantial increase from the updated binding estimate for a total cost of $34,132.30. [Dkt. 1, ¶ 33-34] The Rado Contract reflecting the price increase was not provided to Plaintiffs until after their property was already loaded on the truck. [Dkt. 1, ¶ 35] Mr. Scheuer was also notified that Plaintiffs' belongings would not arrive to their Florida residence by September 1, 2022. [Dkt. 1, ¶ 36]

Accordingly, Rado proposed a $5,700 "expedited delivery charge" to guarantee September 1, 2022, delivery. [Dkt. 1, ¶ 37, 70] Plaintiffs accepted. [Dkt. 1, ¶ 37] Mr. Scheuer and Rado employees continued to work throughout the night and into the morning of August 27, 2022. [Dkt. 1, ¶ 38] Despite the expedited delivery charge, the Plaintiffs' property did not arrive at their Florida home until September 3, 2022, albeit with no unloading crew. [Dkt. 1, ¶ 41] The unloading crew arrived at the Plaintiffs' Florida home the next morning. [Dkt. 1, ¶ 42] At that time, a Rado employee demanded the full balance before he would unload any property, including the $5,700 expedited delivery charge which was never honored. [Dkt. 1, ¶ 43] Plaintiffs paid the full balance. [Dkt. 1, ¶ 44] Plaintiffs subsequently discovered damage to various items while unpacking their belongings. [Dkt. 1, ¶ 45]

## LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Courts accept as true all well-pleaded facts in the complaint "and construe all reasonable inferences therefrom in favor of the plaintiff." *In re Huron Consulting Group, Inc. S'holder Derivative Litig.*, 971 N.E.2d 1067, 1080 (Ill. App. Ct. 1st Dist. 2012).

## ARGUMENT

### I. COUNTS I, III, IV AND V OF PLAINTIFFS' COMPLAINT ARE NOT PREEMPTED BY THE CARMACK AMENDMENT.

Rado argues that Counts I, III, IV, and V of Plaintiffs' Complaint are preempted by the Carmack Amendment. Although the Carmack Amendment governs interstate carriers' liability in certain cases, it "…does not preempt those state law claims that allege liability on ground that is separate and distinct from loss of, or damage to, goods that were shipped in interstate commerce." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997). In other words, the Carmack Amendment only preempts state law claims seeking the loss of or damage to goods in interstate

3

commerce. *See also REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697–98 (7th Cir. 2008) ("[t]he preemptive sweep of the Carmack Amendment extends to state causes of action against carriers where goods are damaged or lost in interstate commerce … claims that do not affect a carrier's liability for lost or damaged goods—such as a suit by a carrier against a person entitled to recover for non-payment—do not upend the uniformity effected by the Carmack Amendment and are therefore not preempted.") (internal citations and quotations omitted). For example, in *Gordon*, the Court held that Plaintiff's claim for intentional infliction of emotional distress was not preempted by the Carmack Amendment as it was separate and distinct from the loss of Plaintiff's property. *Gordon*, 130 F.3d at 289. The same reasoning applies here.

Rado argues that Counts III, IV, and V of the Plaintiffs' Complaint, sounding in fraudulent misrepresentation, violations of the ICFA, and breach of contract are preempted by the Carmack Amendment. However, Plaintiffs' claims under these causes of action do not seek to recover for property damage or loss of property. Instead, Plaintiffs' claims are based on Rado's fraudulent and deceptive business practices, including a fraudulently inflated binding estimate and a failure to present a new estimate *before* the property had already been loaded. [Dkt. 1, ¶ 62-94] These counts are also premised on the fact that Rado knew it could not deliver Plaintiffs' property by September 1, 2022, yet deceptively guaranteed delivery in exchange for $5,700, an exchange which was never honored. In sum, these causes of action are based on Rado's *conduct*, not damage or loss related to property. The Carmack Amendment cannot shield Rado from its deceptive conduct.

Rado cites to the Fifth Circuit for the proposition that the Carmack Amendment governs claims for breach of contract and deceptive trade practices. [Dkt. 24-1, p. 4] However, this Court is not bound by other circuits, and its case is nonetheless distinguishable. *Air Products & Chem., Inc. v. Ill. Cent. Gulf R.R. Co.* concerns a misdelivery where a carrier mistakenly delivered the

4

wrong chemicals to a consignee, causing damage to the consignee's premises "because an ingredient in the misdelivered chemical contaminated the entire contents of a large storage tank." 721 F.2d 483, 484-85 (5th Cir. 1983). The *Air Products* Court held the Carmack Amendment provides a remedy for "foreseeable damages resulting from misdelivery of different cargo than that specified by the bill of lading issued to the damaged consignee." *Id*. *Air Products* concerned a loss of and damage to property, distinguishable from Rado's conduct here. *Air Products* does not discuss any of the deceptive practices alleged by Plaintiffs, and Rado's deceptive conduct does not relate to the damage to or loss of property. Rado's other cited cases also concern damage for loss of property, or loss of market caused by delays in transportations. Again, Rado's cases are distinguishable as they involve property damage. *See New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange*, 240 U.S. 34 (1916) (concerning damages for loss of market caused by delays in transportation); *Atchison, T. & S.F. Ry. Co. v. Harold*, 241 U.S. 371 (1916) (concerning loss of property).

Rado's cite to *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874 (5th Cir. 1996) and *Advantage Transp., Inc. v. Freeways Exp., L.L.C*, No. 4:08-CV-206, 2008 WL 5062672 at *3 (N.D. Tex. 2008) are also inapposite. Both cases held that attorney fees granted by state law are not available in Carmack Amendment claims. Here, Count IV of Plaintiffs' complaint, which seeks attorney fees for violations under the ICFA, is not a Carmack Amendment action and these cases are inapplicable.

Finally, Rado argues that Count I of Plaintiffs' Complaint, alleging violations of Title 49 §375.401 *et al*., is preempted by the Carmack Amendment. This argument is invalid. As mentioned, the Carmack Amendment preempts certain **state law** claims. *See Gordon*, 130 F.3d at 289. Title 49 §375.401 *et al.* is federal law and cannot be preempted by the Carmack Amendment.

**II.    COUNTS III, IV, V OF PLAINTIFFS' COMPLAINT ARE NOT PREEMPTED BY THE FAAAA.**

Rado alleges that Plaintiffs' actions for fraudulent misrepresentation, violations of the ICFA, and breach of contract are preempted by the FAAAA. Rado asserts that the FAAAA preempts state law private claims, including claims for breach of contract. [Dkt. 24-1, p. 5] There are two requirements for FAAAA preemption: (1) a state must have enacted or attempted to enforce a law, and (2) that law must relate to carrier rates, routes, or services by either expressly referring to or having a significant economic effect on them. *Johnson v. Logistics, 2018 WL 1519157*. However, a state's regulatory action is not preempted where its relationship with carrier rates, routes or services is tenuous, remote, or peripheral. Here, Plaintiffs' claims for fraudulent misrepresentation, violations of the ICFA, and breach of contract relate specifically to Rado's fraudulent and predatory conduct. As such, their relationship to Rado's rates, routes, or services are extremely peripheral. Plaintiffs' state law claims stem from Rado holding Plaintiffs' property hostage, charging Plaintiffs twice for the same fuel surcharge, arriving unprepared to the Plaintiffs' Ohio residence, and knowingly misleading Plaintiffs. Because these state law actions only tenuously relate to Rado's rates and services, and more so concern Rado's deceptive conduct, they are not preempted by the FAAA.

**III.    RADO'S FACTUAL REFERENCES ARE IMPROPER FOR A MOTION TO DISMISS.**

Rado's motion repeatedly contradicts the facts alleged in Plaintiffs' complaint. [Dkt. 24-1] However, Rado's factual references are improper as all well-pled facts in Plaintiffs' Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

6

Rado contends that Plaintiffs' claims for violations of Title 49 §375.401 *et al.*, fraudulent misrepresentation, violations of the ICFA, and breach of contract must be dismissed because Plaintiffs signed the revised estimate on August 26, 2022, prior to loading. [Dkt. 24-1, pp. 6, 10-12] Rado also contends that more items were moved by Rado than those included in Trinity's estimates, giving Rado the right to revise its original estimate. [Dkt. 24-1, pp. 6-7, 10-11] Rado goes on to state that Plaintiffs were not charged twice for the 13% Fuel Surcharge, that Rado had a right to revise its estimate for service relating to stairs, that an additional service fee for bulky items was valid, and that the Rado Contract did not guarantee delivery on September 1, 2022. [Dkt. 24-1, pp. 6-8, 10-13] Finally, Rado improperly asserts that pick-up and delivery dates were never guaranteed, and that the expedited delivery fee for $5,700 did not guarantee delivery on September 1, 2022, based on the documents. [Dkt. 24-1, pp. 7-8, 10-13]

These contradictory factual references are wholly improper for purposes of a 12(b)(6) motion to dismiss. As discussed above, the facts in Plaintiffs' Complaint, which are well-pled, must be taken as true and all inferences derived must be drawn in Plaintiffs' favor. *Killingsworth,* 507 F.3d at 618. To properly evaluate any contradictory factual allegations, discovery must be conducted, and dismissal is not proper under these circumstances. Nonetheless, Plaintiffs' Complaint establishes that Rado presented Plaintiffs with the Rado Contract, containing the inflated estimate, *after* the Plaintiffs' possessions were already loaded onto the moving truck. [Dkt. 1, ¶ 35] This allegation alone establishes Rado's violation of Title 49 §375.401 *et al.,* providing that a customer and their mover must negotiate a new binding estimate *before* the mover loads the shipment, or else the mover is bound by the original estimate. *Id*. Under Title 49, Rado's inflated estimate was void and unenforceable and Plaintiffs should have only been bound by Trinity's updated estimate.

Plaintiffs also sufficiently allege that Rado fraudulently guaranteed delivery by September 1, 2022, in exchange for a $5,700 "expedited delivery charge" which was paid for but never honored. [Dkt. 1, ¶ 37, 40, 43] Rado's Contract, therefore, contained an oral modification. To the extent that Rado's Contract is deemed binding, it was orally modified to include an expedited delivery charge in exchange for guaranteed delivery by September 1, 2022. These facts, amongst others, sufficiently describe Rado's unlawful conduct and deceptive business practices. Rado cannot make contradictory and improper factual references in its motion to dismiss.

### IV. RADO'S CARMACK AMENDMENT CLAIM STANDS AS FEDERAL RULES DO NOT REQUIRE SUCH HEIGHTENED ALLEGATIONS.

Plaintiffs must plead the following three elements to establish a cause of action under the Carmack Amendment: (1) delivery of the goods to the carrier in good condition, (2) arrival of the goods in a damaged condition at the final destination, and (3) the amount of damage. *Tokio Marine & Fire Ins. Grp. v. J.J. Phoenix Exp., Ltd.*, 156 F. Supp. 2d 889, 894 (N.D. Ill. 2001). Plaintiffs' Complaint establishes that they discovered damage to their property after their items had been unloaded by Rado and at the time that they were unpacking their belongings. [Dkt. 1, ¶ 43-45] Plaintiffs' supply a dollar amount of $2,000 for the damages that they incurred to their property. [Dkt. 1, ¶ 59] Thus, they sufficiently plead their property damage claims under the Carmack Amendment and Rado's arguments are invalid.

Rado also argues that Plaintiffs failed to acknowledge damage to their property at delivery. However, Plaintiffs did not have a chance to unpack all of their belongings at that time and this argument is impractical. Additionally, Rado maintains that Plaintiffs signed a Waiver of Full Replacement Value Protection which limits Rado's liability to $0.60 per pound per article. The Waiver of Full Replacement Value Protection is void and dismissal of this Count is improper.

V. **COUNTS I-V OF PLAINTIFFS' COMPLAINT ARE NOT SUBJECT TO DISMISSAL BECAUSE THEY DID NOT SUBMIT THEIR CLAIMS DIRECTLY TO RADO.**

The "Claims Department Information" document that Rado refers to states as follows: "As a condition precedent to recovery, , [sic] a claim for loss, damage, delay, overcharge, or property damage must be filed in writing at support@radoexpress.com." [Dkt. 24-2, p. 46] As previously discussed, Counts I-V of Plaintiffs' Complaint are not limited to loss of or damage to their property, delay, and overcharge. Only Count V of Plaintiffs' Complaint relates to property damage, while the rest arise from Rado's deceptive conduct. Separately, Plaintiffs will introduce evidence in this case that the claim was in fact submitted to Rado's support department who, in turn, referred Plaintiffs to Rado's outside counsel. The claim was never honored.

## CONCLUSION

For the above reasons, dismissal of Plaintiffs' Complaint is improper as evidenced by the record and both state and federal law. WHEREFORE, Plaintiffs, GLENN SCHEUER and LINDA SCHEUER, respectfully request that this Court Deny RADO EXPRESS LOGISITICS, INC's motion to dismiss.

Respectfully submitted,
**LINDSAY, PICKETT & POSTEL, LLC**

By: _____
One of the attorneys for Plaintiffs

Christopher J. Pickett (ARDC #6287096)
cpickett@lpplawfirm.com
Haley M. Loutfy (ARDC #6330052)
hloutfy@lpplawfirm.com
Aisha Abid (ARDC #6339911)
aabid@lpplawfirm.com
**LINDSAY, PICKETT & POSTEL, LLC**
200 W. Madison St., Suite 3850
Chicago, Illinois 60606