## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GLENN SCHEUER and
LINDA SCHEUER,

        Plaintiffs,

        v.

RADO EXPRESS LOGISTICS, INC. and
TRINITY RELOCATION GROUP, LLC,
        Defendants.

Case No. 23-cv-00531

Judge John Robert Blakey

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Glenn Scheuer and Linda Scheuer ("Plaintiffs") sue Rado Express Logistics, Inc. for violations of 49 C.F.R. § 375.401 *et seq.* (Count I), the Carmack Amendment, 49 U.S.C. 14706 (Count II), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Count IV), and for fraudulent misrepresentation (Count III), and breach of contract (V).[1] Rado moves to dismiss all five counts against it. [24]. For the reasons explained below, this Court grants in part, and denies in part, Rado's motion.

### I. The Complaint's Allegations[2]

This case arises from an interstate move gone wrong. On June 7, 2022, Plaintiffs contacted Trinity Relocation Group, LLC ("Trinity"), a broker for shippers

---

[1] Plaintiffs also sued Trinity Relocation Group, LLC, *see* [1], but it voluntarily dismissed the claims against this Defendant. *See* [33], [35].

[2] This Court draws the facts from Plaintiffs' Complaint [1], and the exhibits attached to it, which it takes as true at this stage. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

and interstate carriers, regarding a move from their Ohio residence to their Florida residence. [1] ¶ 8. A Trinity customer representative assisted Plaintiffs to evaluate their household items and create a detailed inventory. *Id.* ¶¶ 8–9. Based on that inventory, Trinity provided Plaintiffs with an initial binding estimate of $12,1770.00 for 1,367 cubic feet of property to be shipped. *Id.* ¶¶ 9–11. Shortly thereafter, Plaintiffs updated their inventory, and Trinity provided an updated binding estimate of $13,381.41 for 1,496 cubic feet of property (the "Binding Estimate"). *Id.* ¶ 12.

The Binding Estimate reflected a "move date" of August 25, 2022 and August 26, 2022. *Id.* ¶ 13. Plaintiffs conveyed to Trinity that they needed their property packed and loaded by the end of the day on August 26, 2022 because the buyer of their Ohio home would be arriving on the morning of August 27, 2022. *Id.* ¶¶ 15, 18. Trinity assured Plaintiffs that it could accommodate this schedule and that the property could be delivered to their Florida home by September 1, 2022, as the Plaintiffs also requested. *Id.* ¶¶ 14–15. In its capacity as a broker, Trinity researched carrier options and ultimately recommended Defendant Rado to Plaintiffs as the interstate carrier that would perform the move. *Id.* ¶ 16.

By August 24, 2022, Plaintiffs had not heard from Rado regarding the pick-up scheduled for the following day, so Mr. Scheuer called Trinity. *Id.* ¶ 17. Trinity assured Plaintiffs that Rado's movers would arrive at their Ohio residence between 9:00 a.m. and 10:00 a.m. the following morning. *Id.* ¶ 19. The next day, on August 25, 2022, Mr. Scheurer waited all day for Defendant's movers to arrive. *Id.* ¶¶ 20–21. Rado's movers finally showed up at 5:00 p.m. *Id.* ¶ 22. The Rado movers worked

from approximately 8:30 p.m. to 10:30 p.m. and assured Plaintiffs before leaving that night that they would be back early the next morning to complete the move by end of day, still on schedule. *Id.* ¶¶ 23–24.

On August 26, 2022, the Rado movers did not arrive at Plaintiffs' Ohio residence until approximately 11:00 a.m. *Id.* ¶ 27. The movers continued to work for the remainder of the day, but by 4:00 p.m., a "vast amount of work" remained to be done. *Id.* ¶ 31–32. To ensure the move would be completed on time, Mr. Scheuer began to help the movers he was paying. *Id.*

At 3:30 a.m. on the morning of August 27, 2022, while Mr. Scheuer and the Rado movers were still working, and after most of Plaintiffs' possessions had already been loaded onto the moving truck, the Rado movers approached Mr. Scheuer to renegotiate Rado's Interstate Bill of Lading Contract ("Rado Contract"), now that they had a "better feel" of the amount of property they were moving. *Id.* ¶¶ 33, 35.

The re-negotiated Rado Contract charged Plaintiffs $34,132.30, nearly three times the Binding Estimate, based in part upon an updated volume of items amounting to 3,800 cubic feet. *Id.* ¶ 34. The Rado movers told Plaintiffs that this price was "final" if they "wanted their belongings delivered." *Id.* ¶ 39. In addition, the Rado movers told Mr. Scheuer that his belongings would not arrive to his Florida residence by September 1, 2022, as previously promised. *Id.* ¶ 36. As a result, "out of fear" that their possessions would not arrive on time, Plaintiffs agreed to a $5,700 "expedited delivery charge." *Id.* ¶ 37.

Despite the expedited delivery charge, Plaintiffs' property did not arrive in Florida on September 1, 2022. *Id.* ¶ 41. Instead, it arrived two days later and with no crew to unload it. *Id.* The unloading crew arrived the next day, September 4, 2022, demanding the full balance of the Rado Contract, including the expedited delivery charge, before any property would be unloaded. *Id.* ¶¶ 42–43. Left with little option, Plaintiffs complied and paid the full balance demanded. *Id.* ¶ 44. Adding insult to injury, while unpacking their belongings, Plaintiffs discovered that various items had been damaged. *Id.* ¶ 45. Plaintiffs then initiated this lawsuit.

## II. Legal Standard

To survive a Rule 12(b)(6) motion, a complaint must not only provide Defendants with fair notice of a claim's basis, but it must also be "facially" plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the complaint need not include detailed factual allegations, plaintiff's obligation to provide the grounds for his entitlement to relief requires more than mere labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

On a motion under Rule 12(b)(6), this Court accepts as true all well-pled facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

### III.    Discussion & Analysis

Rado argues that the Carmack Amendment preempts Counts I, III, IV, and V [24-1] at 4–5, and alternatively, that the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501 preempts Counts III–V. [24-1] at 4–6. Rado further argues that all claims must be dismissed because an Agreement between Rado and Plaintiffs provides that, as a condition precedent to recovery in a lawsuit, all claims must first be filed with Rado's support team, and Plaintiffs have not complied with this prerequisite. Finally, Rado argues that Plaintiffs' claims in Counts I –V fail to otherwise state a claim. *Id.* 6–13.

Because preemption presents a threshold issue, the Court will address it first, before turning to whether Counts I–V plausibly allege viable claims to relief.

### A.  Preemption Under the Carmack Amendment

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 *et seq.*, provides shippers with the statutory right to recover for actual losses or injuries to their property caused by carriers involved in the shipment. *See* 49 U.S.C. 14706(a)(1). The purpose of the Carmack Amendment was to create a "nationally

uniform rule of carrier liability" for interstate shipments. *N. Am. Van Lines, Inc. v. Pinkerton Sec. Systems, Inc.*, 89 F.3d 452, 454 (7th Cir. 1996).

To accomplish this goal—despite the statute's ostensible limitation to recovery of damages caused to property itself—the Supreme Court, from its earliest interpretations has "consistently construed the Amendment as imposing much more." *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924, 931 (7th Cir. 2003) (citing *Air Prods. & Chems., Inc. v. Illinois Cent. Gulf R.R. Co.,* 721 F.2d 483, 485 (5th Cir.1983)).

In *New York, Philadelphia, & Norfolk Railroad Company v. Peninsula Produce Exchange of Maryland*, the Supreme Court held that the Amendment's language is "comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." 240 U.S. 34, 38 (1916). Thus, the Court held that the Amendment imposes liability for a delay in shipment without any physical damage to the property being transported. *See id*; *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936) (applying Carmack Amendment to suit for damages caused by late delivery); *see also Adams Express Co. v. Croninger,* 226 U.S. 491, 505–06 (1913) ("Almost every detail of [interstate commerce carrier liability] is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject, and supersede all regulation with reference to it.").

Following these cases, courts have consistently held that the Carmack Amendment's preemptive sweep extends to cases alleging liability for delay or

misdelivery of household goods, even in the absence of permanent loss or actual damage to the property. *See, e.g., Chen v. Mayflower Transit, Inc.*, No. 99-C-626, 2022 WL 1632412, at \*14 (N.D. Ill. July 22, 2002) (collecting cases); *ABT Elecs., Inc. v. Airgroup Corp.,* No. 17-cv-2801, 2018 WL 905504, at \*5 (N.D. Ill. Feb. 15, 2018) (Carmack Amendment preempted claims even though the only "damage" flowed from "delay in delivering" the goods); *see also Moffit v. Bekins Van Lines Co.,* 6 F.3d 305, 306 (5th Cir. 1993) (Carmack Amendment preempted state law claims arising out of carrier's failure to deliver goods to shipper's new address in time for Christmas).

The Seventh Circuit most directly examined the preemptive scope of the Carmack Amendment in *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 294 (7th Cir. 1997). *Gordon* involved claims by an elderly woman who hired a shipping company to move her belongings from Florida to Chicago. 130 F.3d at 284. The driver promised to deliver the plaintiff's goods to her daughter but paid an agent $40 to deliver them instead; the agent then pocketed the money and threw the goods away. *Id.* at 285. Following this failure, United repeatedly lied to the plaintiff and her daughter about the safety of her belongings during the claims process. *Id.* As a result, the plaintiff brought Carmack Amendment and state law claims against United. *Id.* at 284. Before trial, the district court dismissed the state law claims as preempted by the Carmack Amendment. *Id.*

Reviewing whether the district court correctly dismissed the state law claims, the court held that the Carmack Amendment "preempts all state law claims based upon the contract of carriage, in which the harm arises out of the loss of or damage

to goods." *Gordon*, 130 F.3d 282, 294 (7th Cir. 1997) (citing *Hughes v. United Van Lines*, 829 F.2d 1407, 141 (7th Cir. 1987)). Significantly, the court also held that the Amendment does not preempt claims that allege liability on a ground "separate and distinct from" loss of, or damages to goods. *Gordon*, 130 F.3d at 289. In other words, to escape the Carmack Amendment, the carrier's conduct must be "sufficiently distinct from the contract of carriage that a separate and independent claim arises." *Id.* at 290.

Under *Gordon*, the courts narrowly define "separate and distinct" claims. As the court explained, claims for liability arising under a statute prohibiting deceptive trade practices, or for torts, which are *not* dependent upon the existence of a contract of carriage, would be "separate and distinct," and thus not preempted. *Gordon,* 130 F.3d at 289 (citing *Pinkerton*, 89 F.3d at 452)). Likewise, claims of assault or intentional infliction of emotional distress alleging harm to a shipper rather than his property, would not be preempted. *Id.* (citing *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997)).

Applying these principles, the *Gordon* court held that the plaintiff's breach of contract and willful and wanton misconduct claims were "clearly preempted" because the plaintiff alleged damage to property in these claims covered by the Amendment. *Id.* at 289. Additionally, the court determined that the plaintiff's common law fraud claim, based upon fraud in the inducement was preempted, because claims relating to the making of a contract for carriage are "so closely related to the performance of the contract," and the "measure of damages for such claims" is likely to be the loss or

damage to the goods." *Id.* For similar reasons, the court concluded that the plaintiff's ICFA claim alleging fraudulent inducement to contract was also preempted, deferring to an Illinois appellate court decision saying so. *Id.* (citing *Nowalski v. American Red Ball Transit Co.*, 680 N.E.2d 441 (1997)). But the plaintiff's IIED claim was separate and distinct, and thus not preempted. *Id.* at 289.

Based upon *Gordon*, this Court first rejects Rado's argument that the Carmack Amendment preempts Count I, which alleges a violation of 49 C.F.R. § 375.401 *et seq.* The Amendment's preemptive power only extends to state and common law claims, not other federal claims. *See Starr Indem. & Liab. Co. v. YRC, Inc.,* No. 15-cv-6902, 2017 WL 168179, at *5 (N.D. Ill. Jan. 17, 2017) (rejecting defendant's argument that plaintiff's claims under 49 U.S.C. § 14702(a)(2) were preempted because "the Carmack Amendment preempts state law and common law, not other federal statutes")); *Pinkerton*, 89 F.3d at 453 (noting that Carmack Amendment preempts "all state and common law remedies covering this subject"); *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992) (observing that the Carmack Amendment preempts state common law).

Turning to Plaintiffs' state and common law claims, Plaintiffs' breach of contract claim (Count V) is clearly preempted. This claim alleges that Rado breached the contract for carriage itself (the Rado Contract) when it failed to load Plaintiffs' property on time, and then failed to deliver their property by the date agreed. [1] ¶¶ 92–93. Plaintiffs seek damages incurred as a result of this breach. *Id.* at 94.

Plaintiffs argue that this claim escapes preemption because it does not seek to recover for property damage or loss (Plaintiff seeks such damages, but in other claims). *See* [29] at 4. But as described above, the Supreme Court has broadly defined the "loss or damage" falling with the Carmack Amendment's preemptive scope as including damages for delay in delivery of a shipper's property. *See, e.g., Chen*, 2002 WL 1632412, at \*14 (collecting cases); *Peninsula Produce,* 240 U.S. at 231 (Carmack Amendment preempted claim for delayed transport without physical damage to property); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 305–06 (5th Cir. 1993) (Amendment preempted breach of contract claim for failure to deliver property by a certain date); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688–89 (9th Cir. 2007) (Amendment preempted plaintiffs' breach of contract claim for refusal to release property until plaintiffs paid additional charges).

And Rado's failure to load Plaintiff's property at the time agreed concerns, and contributed to, this delayed delivery. *See* [1] ¶¶ 92–93. Accordingly, like the breach of contract claim in *Gordon*, the damage alleged in this claim qualifies as "loss or damage" covered by the Carmack Amendment. *See Gordon*, 130 F.3d at 284 (finding plaintiff's breach of contract claim "clearly" preempted because damage plaintiff alleged was damage to property covered under Carmack Amendment).

Moreover, courts have applied these principles to preempt claims like Plaintiffs' claims here, which allege harm due to a carrier's failure to pick up the belongings by a certain date. *See, e.g., Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 407–08 (3rd. Cir. 2008) (noting that plaintiffs "correctly conceded" that Carmack

Amendment preempted their state law claims for defendant's "failure to live up to its promise" to move plaintiffs' household belongings by date agreed); *see also American Synthetic Rubber Corp. v. Louisville & Nashville Railroad Co.,* 422 F.2d 462, 464–65 (6th Cir.1970) (noting "when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs"). In short, the Carmack Amendment preempts Count V.

Plaintiffs' fraudulent misrepresentation (Count III) and ICFA claim (Count IV) present a closer call, insofar as they do not directly allege liability for loss, damage, or delay. These counts allege that Rado fraudulently: (1) increased the cost of the binding estimate when no additional items were added; and (2) charged Plaintiffs an improper "expedited delivery" charge despite knowing it could not deliver by the date agreed. [1] ¶¶ 64–74, 77–84. As alleged, these extra payments amounted to extortion, because Rado: presented the price increase after Plaintiffs' possessions were already loaded on the truck, indicated that the price was final "if they wanted their belongings delivered," and subsequently held Plaintiffs' property "hostage" by refusing to unload or deliver the property until payment was made. *Id.* ¶¶ 35, 69, 81.

The Court finds *ABT Electronics, Inc. v. Airgroup Corporation*, No. 17-cv-2801, 2018 WL 905504 (N.D. Ill. Feb. 15, 2018), instructive. There, a plaintiff brought a Carmack Amendment claim against a shipping company alleging that the company's delay in delivery caused damages. *Id.* at *4. As in this case, the plaintiff brought claims for common law fraud and violation of the ICFA, alleging that the shipping

company inflated the invoice with improper delivery and service charges. *Id.* at \*3. The plaintiff argued these fraud allegations were "independent from any shipping of goods and independent from any loss or damage from shipped goods." *Id.* The court disagreed, finding these claims "'so closely related' to the performance of the shipping contract between the parties as to be preempted by the Carmack Amendment." *Id.* (quoting *Gordon*, 130 F.3d at 289). These improper charges pertained to the "same interstate transactions" at issue in the plaintiffs' Carmack Amendment claim, and therefore related to the "same goods" that were "damaged" by the failure to deliver them at the agreed-upon time. *ABT Electrs.*, 2018 WL 905504, at \*3.

Similarly, in *Neely v. Mayflower Transit, LLC*, No. 2-cv-9347, 2003 WL 23648655 (N.D. Ill. Aug. 4, 2003), the plaintiff sued a moving company for violation of the ICFA after it charged him $2,000 more than the initial binding estimate at the time of delivery. The movers told the plaintiff they would not deliver his belongings if he did not pay "on the spot," so the plaintiff begrudgingly paid the higher amount, and subsequently discovered damage to his possessions when he unpacked. *Id.* at \*2. Relying on *Gordon*, the court found the plaintiff's ICFA claims preempted, because they were "contingent on and derived from the shipping contract." *Id.* at \*3. *Compare id., with, Pinkerton*, 89 F.3d at 458 (noting that a shipper might be liable under a statute prohibiting deceptive trade practices (and the claim not preempted) if the claim did *not* depend on the existence of a contract of carriage).

Persuaded by *ABT Electronics* and *Neely*, this Court concludes that the Carmack Amendment preempts Plaintiffs' fraudulent misrepresentation and ICFA

claims. These claims remain based upon the existence of a contract for carriage, the Rado Contract, and they are directly related to Rado's performance of the duties arising under that contract. *See Gordon,* 130 F.3d at 289 (citing *Pinkerton*, 89 F.3d at 452); *Peninsula Produce*, 240 U.S. at 38; *see also V.R. Compounding,* 2000 WL 1368045 at \*4 ("of paramount importance in determining whether the Carmack Amendment applies is whether the damage resulted from the breach of a duty under a transportation contract."). Further, like the fraud claims in *Gordon*, these claims are "so closely related to the performance of the contract" for carriage, and the measure of damages for such claims will be based, at least in part, on the "loss" to the goods. And *ABT Electronics* and *Nelly* teach that where a plaintiff's claim against a carrier is based upon both overcharges and loss or damage to property, the claims are preempted. *See ABT Elecs.,* 2018 WL 905504, at \*5 (holding claims preempted where plaintiffs alleged "Defendant damages their goods and then subsequently overcharged them for delivery"); *Neely*, 2003 WL 23648655, at \*3 (claims preempted where plaintiffs alleged defendant overcharged them and then plaintiffs discovered property damage). Therefore, the Carmack Amendment preempts Counts III and IV.

In sum, the conduct giving rise to Counts III, IV, and V is not "sufficiently distinct from the contract of carriage" as to escape the Carmack Amendment's preemptive scope. *See Gordon,* 130 F.3d at 290. Accordingly, this Court dismisses these claims.[3]

---

[3] Plaintiffs' claims in Count III and IV also fail for the independent reason that they are preempted under the Federal Aviation Administration Authorization Act (FAAAA). The Seventh Circuit has held that the FAAAA preempts a claim if a state has "enacted or attempted to enforce a law" and that law relates to carrier "rates, routes, or services 'either by expressly referring to them, or by having a

## B. Effect of Plaintiffs' Agreement to File Claims with Rado's Claims Department

Next, Defendant argues that Counts I–V must be dismissed because Plaintiffs never filed a claim with Rado's Claims Department prior to filing this lawsuit, a contractual prerequisite to suit. [24-1] at 6; [24-2] at 46. But Plaintiffs represent that they did file a claim, and that Rado merely referred them to Rado's outside counsel. [29] at 9. The parties may duke this factual issue out during discovery. At the pleading stage, however, these counts cannot be dismissed on this basis.

## C. Violation of Federal Motor Carrier Safety Regulations, 49 C.F.R. § 375.401 *et seq.* (Count I)

In Count I, the Complaint alleges that Rado violated Federal Motor Carrier Safety Regulations set forth in 49 C.F.R. § 375.401 *et seq.*, which govern household goods carriers. [1] at ¶¶ 46–55. The Motor Carrier Act, 49 U.S.C. § 14104(a), authorizes the Department of Transportation to issue such regulations, which are designed to protect individual shippers, like Plaintiffs, who hire motor carriers to transport their household goods interstate. *See Meryvyn v. Atlas Van Lines, Inc.*, 882 F.3d 680, 680 (7th Cir. 2018) (citing 49 U.S.C. § 14104(a)). To meet this aim, Section 14704(a)(2) of the Act provides shippers with a cause of action for damages against

significant economic effect on them.'" 74 F.4th 453, 458 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 564 (2024) (quoting *Nationwide Freight Sys., Inc. v. Illinois Com. Comm'n*, 784 F.3d 367, 373 (7th Cir. 2015)). Plaintiffs' fraudulent misrepresentation and IFCA relate to Rado's services, and thus fall squarely within the type of claim that is preempted by the FAAAA. *See S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 557 (7th Cir. 2012) (finding fraudulent misrepresentation claim preempted by FAAAA and noting that the FAAAA preempts state laws prohibiting deceptive or unfair business practices); *American Airlines v. Wolens*, 513 U.S. 219, 228, 236 (1995) (finding ICFA claims preempted by nearly identical preemption provision in Airline Deregulation Act). In contrast, Plaintiffs' breach of contract claim (Count V) is based upon "privately ordered obligations," not state-imposed obligations, and is thus not preempted by the FAAAA. *See Wolens*, 513 U.S. at 232.

carriers that violate the Regulations. 49 U.S.C. § 14704(a)(2); *see also Mervyn*, 882 F.3d at 682 (noting that individuals may bring civil actions against carriers for violations of legal rights established under 49 U.S.C. § 14104(a) and related federal regulations).

Relevant here, the Regulations detail procedures governing price estimates for the shipment of household goods. *See* 49 C.F.R. §§ 375.401, 375.403. Under these regulations, carriers must provide shippers of household goods with either a binding or non-binding written estimate of the total charges before shipment of the goods. 49 C.F.R. § 375.401(b). A "binding estimate" is an agreement made in advance between the shipper and the carrier that "guarantees the total cost of the move." § 375.401(b)(1). A carrier may not amend a binding estimate after loading the shipment. § 375.401(i).

Although binding estimates are generally "binding," the regulations do not require carriers to honor a binding estimate where it appears that the shipper has tendered additional household goods or requires additional services that were not identified in the binding estimate. § 375.403 (a)(6). In such an instance, the carrier may negotiate a revised estimate with the shipper, and if agreement cannot be reached, the carrier is not required to service the shipment. *Id.* If, however, the carrier chooses to service the shipment, it must do one of the three things *before* loading the shipment: (1) reaffirm the binding estimate; (2) prepare a revised written binding estimate which accurately lists the additional goods or services in detail; or

(3) mutually agree with the shipper, in writing, that the original binding estimate will be considered to be a non-binding estimate. § 375.403(a)(6)(i)-(iii).

Here, Plaintiffs allege that Rado required them to pay more than the amount on the binding estimate, even though Plaintiffs did not add to the load or request additional services. [1] at ¶¶ 46–55. As alleged, such conduct violates § 375.401. In addition, Plaintiffs allege that even if Plaintiffs had added items or requested additional services, Rado failed to provide a new binding estimate before loading the shipment, and instead approached Plaintiffs at 3:00 in the morning on August 27, 2022, after Rado had already loaded the shipment. [1] at ¶¶ 46–55. Taken as true, this conduct also violates § 375.401(i), which prohibits carriers from amending an estimate after loading the shipment, and § 375.403(a)(6), which requires carriers to take one of the actions outlined if they choose to service a shipment containing additional items or requiring additional services.

In support of dismissal, Rado argues that the exhibits Plaintiffs annexed to the Complaint undermine their claim. Rado directs the Court to the Revised Binding Estimate signed by Plaintiff Glenn Scheuer on August 26, 2022, which it claims shows that the Revised Estimate was presented to Plaintiff prior to loading. [24-1] at 6. On the Revised Estimate, Plaintiff initialed boxes indicating that he approved the revised total before loading, and that this new total was based upon the addition of goods or services. *See id.* Rado contends that it is "obvious" from the Descriptive Inventory included in the Revised Estimate, and the increased packing material charges, that more items and boxes were packed than were included in Plaintiffs'

original estimate. *Id.* at 7. Plaintiffs counter that Rado's "factual references" cannot serve as the basis for the Complaint's dismissal because this Court must accept the Complaint's allegations as true. [29] at 7.

At this stage in the case, this Court must accept allegations as true and "construe all inferences in the plaintiff's favor." *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). But this Court may also "consider any facts set forth in the complaint that undermine the plaintiff's claim," including "exhibits attached to the complaint." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). If "an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Id.* (citing *Forrest*, 507 F.3d at 542).

Here, the Court cannot say that the exhibits annexed to the Complaint incontrovertibly contradict the Complaint's allegations. The Complaint attaches both the applicable binding estimate before the Rado movers arrived, [1-2] at 8, and the Revised Binding Estimate, [1-3] at 6⎯8. Having compared the "Articles List" in the binding estimate to the "Descriptive Inventory" in the Revised Estimate, the relevant material fails to show that Rado packed more items and boxes than were included in the initial estimate. While the "Descriptive Inventory" may appear longer at first glance, this inventory lists each chair, cushion, or box individually. *See, e.g.,* [1-3] at 7 (listing each "box" on an individual line). By comparison, the "Articles List" inventories household goods by category and quantity, *i.e.,* "20 BOX MEDIUM (3C.F) CARRIER PACKED." *See* [1-1] at 8. Accepting as true Plaintiffs' allegations that no

additional household items or services were added, Plaintiffs have stated a claim under § 375.401 because Rado failed to honor the binding estimate and jacked up the price without a basis to do so.

As for whether Rado presented the Revised Binding Estimate to Plaintiffs before or after loading, the fact that Plaintiff Glenn Scheuer may have signed the Revised Binding Estimate on August 26, 2022 rather August 27, 2022, does not undermine the Complaint's allegation that Rado presented the revised estimate "after Rado had already loaded the shipment." *See* [1] ¶¶ 35, 55. Whether presented on August 26th or August 27th at 3:00 a.m., an attempt by Rado to amend the binding estimate *after* loading would violate § 375.401(i) and § 375.403.

Finally, Mr. Scheuer's initialing of boxes on the Revised Binding Estimate is not a basis to toss the claim at this point. Taking the Complaint's allegations as true, the Rado movers presented the Revised Binding Estimate to Mr. Scheuer in the middle of the night, after he had been working alongside them for several hours, and with just hours to spare before Plaintiffs had to surrender the property to its new owner. The movers effectively told Mr. Scheuer that, if they wanted their belongings moved, as scheduled, they needed to pay more, including paying an "expedited delivery charge." *Id.* ¶¶ 37, 39. As alleged, Plaintiffs had to concede to Rado movers' new proposal, or risk the Rado movers holding their "property hostage." *Id.* ¶ 69. Under these circumstances, Rado cannot now use the Revised Binding Estimate to defeat Plaintiffs' claims. The Court denies Rado's motion to dismiss Count I.

### D. Carmack Amendment Claim (Count II)

In Count II, the Complaint alleges that Rado violated the Carmack Amendment by causing at least $2,000 in damage to their property. [1] ¶¶ 57–61. As explained above, the Carmack Amendment grants shippers a cause of action to recover against motor carriers for "actual loss of injury" to their property during interstate shipment. *See REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008) (quoting 49 U.S.C. 14706(a)(1)). To state a claim under the Carmack Amendment, Plaintiffs must allege: "(1) delivery [to the carrier] in good condition; (2) arrival in damaged condition; and (3) the amount of damages." *REI Transp.*, 519 F.3d at 699 (quoting *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys.*, 325 F.3d 924, 929 (7th Cir. 2003)); *Tokio Marine & Fire Inc. Group v. J.J. Phoenix Exp., Ltd.*, 156 F.Supp.2d 889, 894 (N.D. Ill. 2001).

Here, the Compliant contains factual allegations sufficient to state a claim under the Carmack Amendment. The Complaint alleges that the goods arrived in a damaged condition, that Plaintiffs "discovered" damage to various items while unpacking their belongings, and that this damage occurred "while the property was in Rado's care." [1] ¶¶ 45, 60. Rado's argument that no "damage symbols" were found on the Descriptive Inventory is unavailing, because the Complaint alleges that Plaintiffs observed the damage *after* being presented with the Descriptive Inventory, while unpacking. *See id.* ¶ 45.

The Complaint also sufficiently alleges the third element: an amount of damage to their household goods. Rado argues, citing no authority, that the

Complaint fails to state a Carmack Amendment claim because "there are no specifications in Count II regarding the property damaged, or how Plaintiffs arrived at the figure of 'at least $2,000.00.'" [24-1]. But the Complaint alleges that "Plaintiffs are able to establish the value of the damaged goods," which they estimate to be "at least $2,000.00." [1] ¶¶ 59, 61. Nothing more is required at this preliminary stage. *See Coyote Logistic, LLC v. MPJ Trucking, Inc.*, No. 18-cv-1332, 2018 WL 4144628, at *2□3 (N.D. Ill. Aug. 30, 2018) (rejecting defendant's argument on motion to dismiss that plaintiff "did not provide a factual basis for damages to the freight" when plaintiff alleged that defendant "damaged the freight, causing an actual loss of $36,189.92"); *H. Kramer & Co. v. CDN Logistics, Inc.*, No. 13-CV-5790, 2014 WL 3397161, at *2 (N.D. Ill. July 11, 2014) (holding allegations that plaintiff "tendered the goods, in good order and condition" to defendant, "the goods and the trailer were stolen," and the "value of the goods was $148,646.20" sufficient to state a claim under the Carmack Amendment).

Finally, Rado's "waiver" argument remains unconvincing. Rado contends that Plaintiffs signed a waiver which limits Rado's liability to $0.60 per pound article, and therefore Plaintiffs are unable to claim $2,000 for any allegedly damaged items. But Plaintiffs' ability to *recover* the entire sum of the pleaded damages due to a possible waiver is irrelevant at this stage; as explained above, what matters for pleading purposes is that the Complaint alleges an amount of damage to the household goods that Rado transported interstate. *See, e.g., Tokio Marine,* 156 F.Supp.2d at 894.

Because the Complaint sufficiently pleads a viable claim under the Carmack Amendment, the Court denies Defendant's motion to dismiss Count II.

## IV. Conclusion

For the reasons explained above, this Court grants in part, and denies in part Rado's motion to dismiss, [24]. The Court dismisses with prejudice Plaintiffs' fraudulent misrepresentation (Count III), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count IV) and breach of contract (V) claims as preempted by the Carmack Amendment. Plaintiffs' claims for violations of 49 C.F.R. § 375.401 *et seq.* (Count I) and the Carmack Amendment, 49 U.S.C. 14706 (Count II) may proceed.

Dated: March 28, 2024                              Entered:

                                                   John Robert Blakey
                                                   United States District Judge